UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:19-CR-145-7 |
| ) | |
| LYNN RICHARD NORTON ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Lynn Richard Norton's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. 582], the Federal Defender Services of Eastern Tennessee's Supplements [Doc. 584 & 599], Mr. Norton's Pro Se Motion to Appoint Counsel [Doc. 598], the United States' Response in opposition [Doc. 604], and Mr. Norton's Pro Se Motion to Compel the District Court to Grant his Motion under 3582(c)(1)(A) [Doc. 611]. For the reasons herein, the Court will deny each of Mr. Norton's motions.

I. BACKGROUND

In September 2020, a superseding indictment was filed charging Mr. Lynn Richard Norton with one count of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846, 841(a)(1), (b)(1)(A), one count of distribution of 50 grams or more of methamphetamine, in violation of the same, one count of possession with intent to distribute 5 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), 18 U.S.C. § 2, and *Pinkerton v. United States* 328 U.S. 640 (1946), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [Superseding Indictment, Doc. 250]. In March 2021, Mr. Norton proceeded to trial on these charges. A jury found Mr. Norton guilty on all charges except possession with intent to distribute 5 grams or more of methamphetamine. [Jury Verdict, Doc. 389].

At sentencing, Mr. Norton received a total offense level of 40 and a criminal history category of VI, resulting in a guidelines range of 360 months to life. [Presentence Investigation Report, Doc.

454, at 32]. Mr. Norton objected to this calculation, and the Court sustained his objection, resulting in a new range of 324 to 405 months. [Statement of Reasons, Doc. 504, at 1]. Further, the Court granted a defense motion for a variance from the guidelines range and sentenced Mr. Norton to 240 months' imprisonment and a term of 5 years of supervised release. [Judgment, Doc. 503, at 2-3 and Statement of Reasons, Doc. 504 at 3].

Mr. Norton now moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), arguing that a combination of receiving an unusually long sentence and a life threatening/terminal illness amount to extraordinary and compelling circumstances to warrant his release. [Def. Mot., Doc. 582, at 4-5]. The Federal Defenders Service (FDS) supplement elaborates on Mr. Norton's health issues. [Supplement, Doc. 584]. The United States responds in opposition, arguing that medical records do not establish that Mr. Norton's condition amounts to extraordinary and compelling circumstances, and that in any event, the § 3553(a) factors weigh heavily against Mr. Norton's release. [U.S. Resp., Doc. 604]. The Court agrees.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts his administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

(c) Modification of an imposed term of imprisonment. —The court may not modify

a term of imprisonment once it has been imposed except that—

1. in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A)'s exhaustion requirement is a mandatory claims-processing rule. *United States v. Alam*, 960 F.3d 831, 833–36 (6th Cir. 2020). Here, Mr. Norton has provided adequate documentation of his pursuit of administrative remedies. He submitted a warden request

for a Reduction in Sentence on December 11, 2024. [Supplement, Doc. 599, at 2]. That request was denied by the warden on January 17, 2025. [*Id*.] Additionally, the Federal Defender Service of Eastern Tennessee submitted a warden request on Mr. Norton's behalf on June 9, 2025 [*Id.*]. As of the date of this order, the Court has not received notice that the warden has responded to this request. As a result, more than 30 days have passed since the submission of both requests with no response from the warden. Therefore, Mr. Norton has exhausted his administrative remedies, and this Court may consider his motion.

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citation omitted), and the statute containsthree substantive requirements that the Court must address in sequential order before it can grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010))).

**A. The First Requirement: Extraordinary and Compelling Circumstances**

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) Extraordinary and compelling reasons warrant the reduction; or

    (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

> 1. Extraordinary and Compelling Reasons. —Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>     1.    Medical Condition of the Defendant. —
>
>     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>     (ii) The defendant is—
>
>         (I) suffering from a serious physical or medical condition,suffering from a serious functional or cognitive impairment, or
>         (II) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13.

Mr. Norton of course argues that his health issues amount to extraordinary and compelling circumstances, specifically that his illness is terminal. [Supplement, Doc. 584, at 4]. He provides that he was first diagnosed with heart disease in 1997. [PSR, Doc. 454, at 31]. He reported no other symptoms or issues until he received a stent in his heart in 2014 [*Id*.]. At the time his probation officer interviewed him for the purposes of his PSR, he reported that he was supposed to be taking medication for his heart disease, but he was not. [*Id*.] In addition to his heart problems, he reported that he suffered from Chronic Obstructive Pulmonary Disease (COPD), spinal stenosis, and glaucoma. [*Id*.] According to the supplement filed by FDS, Mr. Norton also suffers from hyperlipidemia, hypertension, coronary artery disease, peripheral vascular disease, GERD, umbilical hernia, post-traumatic osteoarthritis, cervicalgia, neuralgia, and hepatitis C (HCV AB (+)). [Supplement, Doc. 584, at 4].

It is apparent that Mr. Norton suffers from a plethora of health issues, the most serious of which affects his heart. In December 2023, he was diagnosed with bilateral carotid stenosis. [*Id*., at 5]. In April 2024, he underwent a carotid endarterectomy (CEA). [*Id*.] While at the hospital, Mr. Norton received abnormal EKG results and had a cardiac catheterization (heart cath) which revealed more evidence of progressing heart disease. [*Id*.]. The provider treating Mr. Norton recommended that he receive aggressive treatment for his heart disease. [*Id*.]. After his return to FCI Beaumont, he experienced continuing neck pain and underwent another CEA. [*Id*.]. It was recommended that he undergo another CEA in the future, which was scheduled for October 2024. [*Id*.]. However, BOP records indicated that Mr. Norton decided to forego that procedure due to a flu-like illness. [*Id*.].

Mr. Norton was subsequently transferred to FCI Loretto, where he experienced severe chest pain and was transferred to UPMC for evaluation. [*Id*.]. There, a transthoracic echocardiogram (TTE) revealed more abnormal findings, namely a left ventricular ejection fraction of 45-50%,

abnormal septal motion consistent with abnormal electrical activator, borderline dilated right ventricle, and diastolic dysfunction grade 1. [*Id*.]. A stent was placed, and he was returned to FCI Loretto and advised to follow up within 4-6 weeks. [*Id*. at 6].

Subsequently, Mr. Norton's health has declined further. In March 2025, he was found collapsed on the floor followed by left side chest pain. [*Id*.] He was transported to UPMC where emergency room staff noted that Mr. Norton was experiencing sharp, intermittent chest pain. [*Id*.]. Testing revealed that the left ventricular ejection fraction had reduced to 25-30%. [*Id*.]. According to FDS, patients with LVEF < 40% are at increased risk of mortality, cardiac death, stroke, and myocardial infarction. [Id., quoting Siontis GC, Branca M., Serruys P., Silber S., Raber L., Pilgrim T., Valgimigli M., Heg D., Windecker S., Hunziker L. *Impact of left ventricular function on clinical outcomes among patients with coronary artery disease*. Aug. 29, 2020. https://academic.oup.com/eurjpc/article/26/12/1273/5925807. After this, due to Mr. Norton's severe heart attack, he was discharged with a LifeVest, which is a wearable defibrillator that monitors his heart at all times and will deliver a shock treatment to restore his heart to a normal rhythm in the event arrythmia begins. [*Id*. at 7].

Mr. Norton was then transferred to FMC Devens. [*Id*.]. In May 2025, Mr. Norton was examined for evaluation and scheduling of his recommended CEA. [*Id*.]. At this time, Mr. Norton's provider was concerned that surgery would not be safe due to his cardiac condition. [*Id*.]. Mr. Norton further argues that his age, 66, exacerbates his health issues and ultimately lacks the ability to "maintain consistent self-care". [*Id*.]. He is wheelchair bound and needs an inmate companion to help with daily activities. [*Id*.]. Finally, Mr. Norton argues that all the above information amounts to extraordinary and compelling circumstances for his release under § 3582(c)(1)(A).

In addition to his declining health, he offers several other factors in support of his argument for compassionate release. He emphasizes his rehabilitative efforts and his lengthy sentence. Mr. Norton has completed several classes and programs while incarcerated, including S-ACT Work

Keys Advanced and S-ACT Work Keys. [*Id*. at 9]. He has also enrolled in GED classes and is working on obtaining his GED. [*Id*.]. He further points to his disciplinary record, noting that he has received no disciplinary infractions at his current facility. [*Id*.].

The United States responds that Mr. Norton's medical records do not clearly establish that his medical conditions are terminal, nor that "his ability to provide self-care has been 'substantially diminished'." [U.S. Resp., Doc. 604, at 11]. Further, the United States points out that Mr. Norton's conditions existed at the time he was sentenced, and that "facts that existed at sentencing cannot… be construed as 'extraordinary and compelling reasons' to reduce a final sentence." [*Id*. at 7]. While the Court agrees with the United States's assessment, it acknowledges that Mr. Norton's conditions have significantly worsened since the time of sentencing. Additionally, while the medical records do not clearly state a prognosis or that Mr. Norton's condition is terminal, it is apparent to the Court that even with the interventions he has undergone, his heart health continues to decline and has left him in a fragile state.

Ultimately, the Court finds that the combination of all the above factors, Mr. Norton's declining heart health and his rehabilitative efforts, amount to extraordinary and compelling circumstances to warrant compassionate release. However, the Court does agree with the United States's argument that the § 3553(a) factors weigh heavily against Mr. Norton's release, discussed in more detail below.

### 2. The Second Requirement: Applicable Factors Under § 3553(a)

Although Mr. Norton has succeeded in establishing an extraordinary and compelling reason for his compassionate release, he is not entitled to release unless he also establishes that § 3553(a)'s factors weigh in favor of it. See *Ruffin*, 978 F.3d at 1008 ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief." (citations omitted)); see also *Sherwood*, 986 F.3d at 954 (declaring that

"[the defendant] must make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today" (citation omitted)).

Under § 3553(a), the Court must impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing and must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission];

. . . .

(5) any pertinent policy statement guidelines [issued by the Sentencing Commission];

. . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court need not weigh all of these factors; rather, it must "consider all *relevant* § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114 (emphasis added) (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007)). The government

argues that several factors, namely the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, as well as the sentencing range established by the guidelines and the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct, weigh against Mr. Norton's release. [U.S. Resp., Doc. 604, at 16-17].

Mr. Norton argues that, under § 3553(a)'s factors, his immediate release from incarceration and placement on supervised release would result in a sentence that is sufficient, but not greater than necessary, to achieve the goals of the statute. [Supplement, Doc. 584, at 11]. He does not go into great detail in this argument, but does state that he has already served a significant sentence, is no longer a threat to society, and that there is "no additional benefit to continued incarceration for an individual with his particular medical circumstances." [*Id*.].

First, the government emphasizes in its argument the seriousness of Mr. Norton's offense. Drug offenses are inherently serious offenses, *see United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000))). Further, firearm offenses are gravely serious. Here, Mr. Norton was convicted of several offenses, including being a felon in possession of a firearm, conspiracy to distribute methamphetamine, distribution of methamphetamine, and possession with intent to distribute methamphetamine, all very serious offenses. [Jury Verdict, Doc. 389].

The Court acknowledges the severity of this conduct and these offenses, and the need for Mr. Norton's sentence to reflect that. So far, Mr. Norton has been incarcerated for approximately six years and three months. While this is no small amount of time, Mr. Norton's guidelines range, before the Court granted a variance, was 324 to 405 months – equivalent to 27 years to 33 years and 9 months. [Statement of Reasons, Doc. 504, at 1]. Six years and three months is wholly insignificant to reflect both the guidelines range applied to Mr. Norton and his actual sentence of 240 months, or 20 years. [Judgment, Doc. 503, at 2]. Additionally, Mr. Norton was incarcerated

for a period of 21 years for unrelated crimes, from 1996-2017, and engaged in the conduct underlying the instant offense in 2019. [PSR, Doc. 454, at 5, 32]. This makes it clear to the Court that if a sentence of 21 years was not enough to deter Mr. Norton from further criminal conduct, the small portion of the sentence he has served so far will not do the trick.

Another relevant factor The Court must consider under §3553(a) is the need to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring the Court to consider the need to protect the public from further crimes). The Court finds that this factor weighs against Mr. Norton's release. At the time of Mr. Norton's offense and sentencing, he had been diagnosed with heart disease, had received a stent, and was diagnosed with high blood pressure, COPD, spinal stenosis, and glaucoma. [Presentence Investigation Report, Doc. 454, at 31]. While Mr. Norton's condition has progressed, he was ill at the time of this offense and sentencing. His instant offense occurred after he had his first stent placed and was suffering from several other conditions, meaning that despite his deteriorating health, he continued to involve himself in criminal conduct. This fact tends to indicate that Mr. Norton's health is not of great significance to him when engaging in criminal conduct.

Considering each of the above factors, the Court finds that the § 3553(a) factors weigh against Mr. Norton's release.

### III. CONCLUSION

Although Mr. Norton has identified an extraordinary and compelling reason for compassionate release he has not shown that § 3553(a)'s factors balance in favor of compassionate release. Therefore, he is not entitled to compassionate release under § 3582(c)(1)(A). His motion for compassionate release is therefore **DENIED.** Consequently, his motion to appoint counsel to assist in this matter [Doc. 598] and his motion to compel the Court to grant his motion [Doc. 611] are **DENIED AS MOOT**.

So ordered.

ENTER:

                                                s/ J. RONNIE GREER
                                      UNITED STATES DISTRICT JUDGE