UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
TENNESSEE AT GREENEVILLE

| | | |
|---|---|---|
| LYNN RICHARD NORTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:24-CV-221-JRG |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Petitioner Lynn Richard Norton's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1]. The Court has determined that the files and records in the case conclusively establish that Mr. Norton is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons herein, the Court will deny Mr. Norton's motion.

## I. Background

In September 2020, a superseding indictment was filed charging Mr. Norton with one count of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), one count of distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of, aided and abetted by James Alan Ward, possession with the intent to distribute 5 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 18 U.S.C. § 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946). [2:19-cr-00145-7, Superseding Indictment, Doc. 250, at 1, 3-4]. In March 2021, Mr. Norton stood trial

and was convicted on 3 of the above counts, but was acquitted on Count 11, aiding and abetting the possession of methamphetamine with intent to distribute. [*Id*., Jury Verdict, Doc. 389].

At sentencing, Mr. Norton's guidelines sentencing range was 360 months to life, based on a total offense level of 40 and a criminal history category of VI. [*Id*., Presentence Investigation Report, Doc. 454, at 32]. Each count of conviction carried a statutory minimum, the longest of which is 20 years under 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C). [*Id*.]. The Court sustained an objection to a two-level enhancement pursuant to USSG §2D1.1(b)(12), which produced a new offense level of 36 and guidelines range of 324-405 months. [2:19-cr-00145-7, Statement of Reasons, Doc. 504, at 1] Ultimately, the Court varied from the applicable guidelines range, and Mr. Norton was sentenced to 240 months' imprisonment with a term of 5 years of supervised release to follow. [*Id*., Judgment, Doc. 503, at 2-3].

## II. Standard of Review

Under § 2255, "a prisoner in custody under sentence of a federal court claiming the right to be released … may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that the "judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." Id. § 2255(b). The legal standard that governs collateral review under § 2255 as opposed to direct review on appeal is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); see *Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999).

A prisoner seeking relief under 28 U.S.C. § 2255 must show as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an

error of fact or law that was so fundamental as to render the entire proceeding invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To obtain relief for a denial or infringement of a constitutional right, a petitioner must establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings". *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To obtain relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of the "rudimentary demands of fair procedure". *Reed v. Farley*, 512 U.S. 339, 354 (1994).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); see *Pough*, 442 F.3d at 964. Conclusory allegations alone, without supporting factual averments, are generally insufficient to demonstrate a valid claim under § 2255. *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013).

## III. Analysis

In support of his § 2255 petition, Mr. Norton presents several arguments. Many of his arguments involve alleged claims of ineffective assistance of counsel, but he also brings several claims challenging the calculation of his sentence, decisions made by this Court at trial, the constitutionality of his firearm conviction, and his classification as a career offender under the Armed Career Criminal Act. *See generally* [Motion, Doc. 1]. As the Court will explain below, none of these arguments have merit and Mr. Norton's § 2255 petition will be denied as a result.

### A. Ineffective Assistance of Counsel

The Sixth Amendment states that "in all criminal prosecutions, the accused shall enjoy the right… to have the Assistance of Counsel for his defence." This right is not merely to representation, but to *effective* representation. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). When a petitioner contests his sentence by raising the specter of ineffective assistance of counsel, he normally can succeed only by satisfying the familiar *Strickland* test, a two-pronged test that requires a showing of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

To obtain relief based upon a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.* In other words, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. A court has license to address the two prongs of the bipartite tests in any order, and if a petitioner fails to establish either prong of this test, his claim of ineffective assistance of counsel fails. *Id.* at 697.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Id.* at 673. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action

"might be considered sound trial strategy." *Id.*

"Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). In fact, "counsel's performance is strongly presumed to be effective." *Jones v. Bell*,801 F.3d 556, 562 (6th Cir. 2005). Even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Strickland v. Washington*, 466 U.S. 668, 691 (1984).

***1. Counts 1 & 11 – "James Ward Charges"***

As best the Court can discern, Mr. Norton argues that his attorney, Jessica McAfee, made several mistakes, both at trial and at the appellate level, as it relates to Counts 1 & 11 of the superseding indictment. *See generally* [Motion, Doc. 1]. The Court will refer to these charges as the "James Ward charges", as the Assistant United States Attorney did at trial and as Mr. Norton does throughout his motion.

These charges stemmed from a traffic stop conducted on May 11, 2019. [2:19-cr-00145-7, Presentence Investigation Report, Doc. 454, at 6]. Deputies with the Hamblen County Sheriff's Office were conducting surveillance on Mr. Norton's residence when they observed a truck leaving the residence. [*Id.*]. Deputies followed the truck and attempted to stop the truck after observing the driver, James Ward, driving left of the center line. [*Id.*]. After a short pursuit, James Ward fled on foot, and Mr. Norton, the passenger, remained in the truck. [*Id.*]. During this stop, deputies observed a small pink baggie in the floorboard, prompting a search of the vehicle which produced a Crown Royal bag in the center console. [*Id.*]. Inside the bags were methamphetamine and digital scales. [*Id.* at 7]. Mr. Norton and James Ward were subsequently charged in Count 1 of the

indictment with conspiracy to distribute 50 grams or more of methamphetamine, and in Count 21 of with aiding and abetting each other to possess with the intent to distribute 5 grams or more of methamphetamine. [2:19-cr-00145-7, Indictment, Doc. 1, at 1, 8].

a. <u>False Charges</u>

To begin, Mr. Norton argues that both of these charges are "false charges". [*Id.*, Motion, Doc. 1, at 1]. To support the claim that his aiding and abetting charge was false, Mr. Norton points out that Mr. Ward pleaded guilty to "possessing" the methamphetamine found in the truck as well as the paraphernalia. [*Id.*]. In Mr. Norton's view, Mr. Ward's decision to plead guilty to his charges means that he took sole responsibility for possessing the evidence found in the truck, and that Mr. Norton should have been absolved of responsibility as a result. However, aiding and abetting a drug offense covers a broader range of conduct than simply possessing drugs. "We recognize that aiding and abetting a drug offense may encompass activities, intended to ensure the success of the underlying crime, that take place after delivery and after the principal no longer possesses the narcotics." *United States v. Ledezma*, 26 F.3d 636, 1994 WL 247428 (6th Cir. 1994). Therefore, Mr. Norton did not need to have sole possession over the drugs to be charged with aiding or abetting. In any event, he was acquitted on Count 11, meaning that even if his attorney's decision not to challenge this charge was deficient, he cannot show that he was prejudiced by that decision as required by *Strickland,* 466. U.S. 668.

As for Count 1, the conspiracy charge, Mr. Norton does not make a clear argument as to why that charge would be "false". He states several times that Mr. Ward's testimony was "perjured" or "false", or that the charge was unlawfully pursued because the grand jury did not have enough evidence to indict him. [Motion, Doc. 1]. As for his allegations of perjury against Mr. Ward, he provides no evidence for the Court to consider. He simply states multiple times, as a fact, that Mr.

Ward's testimony was perjured. [*Id.*].

At one point during sentencing proceedings, Mr. Norton addressed the Court and asked, "If James Ward's testimony was perjury and I can prove it was perjury, then how you going to accept 100-500 grams of methamphetamine, if he committed perjury on the witness stand and I can prove it by the record?". [2:19-cr-00145-7, Transcript, Doc. 517, at 12:11-16]. The Court answered this question, informing Mr. Norton that the jury believed at least some of Mr. Ward's testimony and that the Court cannot inquire of the jury why or what part was believed. [*Id.*, lines 17-21, 24-25]. The Court reiterates its earlier reasoning: the jury is tasked with assessing the credibility of a witness, and the jury must have believed at least some of James Ward's testimony to reach a verdict of guilty on Count 1. Further, Mr. Norton continues to allege that the testimony was perjury, but has not attempted to produce any evidence of such, although he previously told the Court he could prove it.

Without any corroborating evidence, Mr. Norton's belief that James Ward's testimony at trial was perjury is not enough for the Court to decide that the "James Ward charges" were false charges. Nor would it have been enough for his attorney to argue such at either the trial or appellate level. Her decision to not challenge the "James Ward charges" on the bare bones assertion that James Ward's testimony was perjury was reasonable, and does not render her performance deficient or prejudicial as required by *Strickland*, 466. U.S. 668.

b. Fourth Amendment Violations

Mr. Norton also faults his attorney for not continuing to argue at the trial level and on appeal that he was unlawfully detained, the vehicle was unlawfully searched, and that excessive force was used to remove him from the vehicle during the May 11, 2019, traffic stop. [Motion, Doc. 1, at 2].

Mr. Norton's attorney first brought this argument in a pretrial Motion to Suppress. [2:19-cr-00145-7, First Mot. to Suppress, Doc. 255]. The motion was heard by Magistrate Judge Cynthia R. Wyrick. [*Id*., Minute Entry, Doc. 323]. Magistrate Judge Wyrick then entered a report and recommendation, recommending that Mr. Norton's motion be denied. [*Id*., Doc. 330]. The Court reviewed the record and the recommendation and agreed with the Magistrate Judge. [*Id*., Doc. 332]. Mr. Norton appealed the Magistrate Judge's Report and Recommendation, but did so without his attorney. [*Id*., Appeal, Doc. 344]. This appeal was denied as the Court had warned him several times that pro se filings would not be entertained because he was represented by counsel. [*Id*., Motion, Doc. 378]. His attorney did not appeal.

Mr. Norton's attorney's decision not to appeal the adoption of the Report and Recommendation denying the First Motion to Suppress cannot be deemed deficient. The Report and Recommendation provided binding case law justifying the officers' actions and thoroughly applied that law to Mr. Norton's experience. Such an argument at either the trial or appellate level would have likely been futile, and at worst, frivolous. Therefore, Mr. Norton fails to show that his attorney's actions were deficient as required by *Strickland,* 466. U.S. 668.

c. <u>Mistrial</u>

Mr. Norton also argues that his attorney should have moved for a mistrial due to James Ward's "perjured testimony" and the alleged Fourth Amendment violations. For the same reasons discussed above, his attorney cannot be deemed deficient for failing to move for a mistrial on issues that were not likely to prevail.

***2. Prosecutor's Use of "Hearsay"***

Next, Mr. Norton argues that his attorney's failure to "object to the due process violation by

the prosecutor's misconduct in using false hearsay information that the District Court ordered limited" amounts to ineffective assistance of counsel. [Motion, Doc. 1, at 17]. In support of his argument, Mr. Norton refers to a notice of intent to use 404(b) evidence: that his home was a "drug house". [*Id.*]. Mr. Norton challenges this, arguing that the only evidence that his residence was a "drug house" was the pistol and "fertilizer" obtained by informant Cheree Greene, which he alleges was planted by Ms. Greene on his property and later retrieved to turn over to law enforcement. [*Id.*].

He is correct in arguing that the District Court ordered that the Government could only use limited 404(b) evidence, but he is mistaken as to what the Government was prevented from using. At a hearing for the Defense's Motion in Limine [2:19-cr-00145-7, Doc. 375], the Court made an oral ruling to grant the Motion in Limine but only as to Paragraph 1 of the Government's Notice. [*Id.*, Doc. 531, at 37:15-19]. That paragraph only included that Mr. Norton's residence was known by the Hamblen County Sheriff's Office to be a place where illegal drugs were used, but that knowledge was based on hearsay information from anonymous informants. [*Id.*, Notice, Doc. 353, at 1].

The Court did not limit the testimony of Ms. Greene. Further, Mr. Norton offers no evidence that Ms. Greene was colluding with law enforcement to plant evidence on his property, and only points out that Ms. Greene had pending felony drug warrants and did so in exchange for money and assistance from law enforcement. [*Id.*]. Mr. Norton's allegation, without any supporting evidence, is not enough to support a motion for mistrial or otherwise challenge this evidence.

Mr. Norton also argues that the Government used hearsay information, against the Court's order, when presenting James Ward's testimony. [Motion, Doc. 1, at 17]. However, as discussed above, the Court did not order any evidence to be excluded other than the Hamblen County

Sheriff's Office's knowledge that his residence was a "drug house." James Ward's testimony was not ordered excluded, nor was it hearsay. Again, his attorney cannot be found to have provided ineffective assistance for failing to argue a meritless argument. Therefore, Mr. Norton has not shown his attorney's performance to be deficient or prejudicial in this regard, as required by *Strickland*, 466. U.S. 668.

### *3. Grand Jury Transcripts*

Next, Mr. Norton argues that his attorney's failure to "investigate and move for the disclosure of the Grand Jury transcript charging counts 1 and 16" constitutes ineffective assistance of counsel. [Motion, Doc. 1, at 22]. The Sixth Circuit already determined that Mr. Norton had no right to the Grand Jury transcripts. [2:19-cr-00145- 7, Doc. 579]. His attorney was reasonable in her decision not to pursue the grand jury transcripts further. Therefore, Mr. Norton has not shown that his attorney's performance in this regard was deficient or prejudicial, as required by *Strickland*, 466. U.S. 668.

### *4. Cross Examination of Cheree Greene/Illegal Entry*

Next, Mr. Norton argues that his attorney's failure to "raise the confidential informant's 'veracity'" and failure to "cross examine Greene's trial testimony" amounts to ineffective assistance. [Motion, Doc. 1, at 26]. It is unclear what Mr. Norton believes his attorney should have done at cross examination. Instead, he begins to argue that Ms. Greene's entry into his home was a Fourth and Fifth Amendment violation because she entered without a warrant or permission to intercept oral communication. [*Id*., at 27]. Without a clear argument supporting his allegation that his attorney failed to cross-examine Ms. Greene or challenge her veracity, the Court moves on to the alleged constitutional violations.

The Sixth Circuit has held that "[a] person's Fourth Amendment Rights are not infringed if he or she consents to the invasion", and that "[a] person may still validly consent to a guest's entry, even if the guest lies about his or her identity or the reasons for the entry." *United States v. Hankins*, 195 Fed. Appx. 295, 302 (6th Cir. 2006). Mr. Norton allowed Ms. Greene into his home. That she was wired and working with law enforcement is of no consequence. His attorney's decision not to challenge this was neither deficient nor prejudicial, and does not meet the requirements of *Strickland*, 466. U.S. 668.

#### ***5. Forfeiture of Appellate Arguments***

a. <u>Denial of Forensic Testing</u>

Next, Mr. Norton argues that his attorney's failure to include the District Court's denial of his motion for DNA and fingerprint testing in the statement of issues as required by Federal Rule of Appellate Procedure 28(a)(5), resulting in the forfeiture of that argument, amounts to ineffective assistance of counsel. [Motion, Doc. 1, at 10].

While it is true that the argument was forfeited for failure to include it in the statement of issues, it is not likely that Mr. Norton would have prevailed. Mr. Norton asked the Court to order DNA and fingerprint testing for the handgun he provided to Cheree Greene. [2:19-cr-00145- 7, Motion to Compel Forensic Testing, Doc. 91]. A hearing was held before Magistrate Judge Cynthia Wyrick, and the motion was subsequently denied.

The Court reasoned that forensic testing would not yield exculpatory evidence, and that both Defendant's counsel and the United States agreed that testing any firearm for DNA only yields results in about 10% of cases, meaning that even if the results did not produce Mr. Norton's fingerprints on the gun, the United States could still argue that the results were not meaningful and

did not prove that the gun was never in his possession. [*Id.*, Order, Doc. 116, at 2]. Further, if testing did produce Mr. Norton's fingerprints on the gun, those results would deprive his attorney of the ability to argue that there is no forensic evidence against him. [*Id.*, at 2-3]. Therefore, the decision to deny his motion to compel forensic testing was strategically beneficial for him, and his attorney's forfeiture of the argument on appeal was not prejudicial, as required by *Strickland*, 466. U.S. 668.

b. <u>Admission of Prejudicial Evidence</u>

Lastly, Mr. Norton also argues that his attorney's failure to develop an argument challenging the Court's admission of certain pieces of evidence amounts to ineffective assistance of counsel. [Motion, Doc. 1, at 25]. The Sixth Circuit deemed this argument abandoned because his attorney asserted that the audio recording from the informant was unfairly prejudicial, but did not provide any law to support that argument. [2:19-cr-00145- 7, Opinion, Doc. 547, at 6]. In its response, the United States argues that the recording was relevant and not prejudicial, because, under Federal Rule of Evidence 401, it tended to make more probable that Norton had sold a handgun and meth to Ms. Greene, as she testified. [U.S. Resp., Doc. 14, at 14]. The Court agrees with the United States.

The audio recording of an encounter that Ms. Greene testified to did nothing but corroborate her testimony. It may seem prejudicial to Mr. Norton because without the audio recording, the jury may not have believed Ms. Greene's testimony. However, an audio recording that makes it more likely that a witness is telling the truth about the defendant committing the crime he is on trial for is not unfairly prejudicial. His attorney's abandonment and waiver of a meritless argument is not prejudicial, and does not meet the standard for ineffective assistance of counsel as required by *Strickland*, 466. U.S. 668.

### 6. *Ineffective Assistance of Counsel Conclusion*

Taking all of the above arguments together, Mr. Norton has not shown that his attorney's performance, at either the trial or appellate level, was deficient or prejudicial as required by *Strickland*, 466. U.S. 668. Therefore, his motion will be denied on these grounds.

## B. Procedurally Defaulted Arguments

Mr. Norton argues several issues that are procedurally defaulted because he did not bring them on appeal. Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim. See *Bousley v. United States*, 523 U.S. 614, 621 (1998), *Peveler v. United States,* 269 F.3d 693, 698 (6th Cir. 2001). For a federal prisoner to obtain review of a defaulted claim in a § 2255 motion, he must show cause to excuse his failure to raise the claim previously and actual prejudice resulting from the alleged violation. *Id*. If the prisoner is unable to show cause and prejudice, he may still be able to obtain review of his claims if his case fits within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, as when he submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622-23.

Mr. Norton argues that the District Court erred in admitting James Ward's testimony into evidence, erred when allowing "false" evidence that Mr. Norton offered James Ward a firearm, that his firearm conviction was unconstitutional under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1[1], that his sentence was unusually long, and challenges the legality of his conspiracy conviction. [Motion, Doc. 1]. Each of these arguments could have been argued on

[1] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

appeal, and Mr. Norton provides no explanation as to why they were not. Therefore, they are procedurally defaulted, and the Court declines to consider them.

### C. Arguments Already Brought on Appeal

Mr. Norton brings two arguments that were already brought on appeal – that the Court erred in calculating his drug quantity and in applying a U.S.S.G. § 3C1.1 enhancement. [2:19-cr-00145-7, Opinion, Doc. 547]. A § 2255 petition may not be employed to relitigate an issue that was raised and considered on direct appeal, absent highly exceptional circumstances such as an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999). Mr. Norton does not attempt to show any exceptional circumstances that would warrant the relitigation of these issues. Therefore, the Court declines to consider them.

### *D. Erlinger v. United States*

Lastly, Mr. Norton challenges his classification as a career criminal under the Armed Career Criminal Act (ACCA). In support, he cites *Erlinger v. United States*, 602 U.S. 821, 144 S.Ct. 1840, 219 L.Ed.2d 451 (2024). In *Erlinger*, the Supreme Court found that under the Fifth and Sixth Amendments, defendants are entitled to have a jury unanimously determine beyond a reasonable doubt whether past offenses were committed on separate occasions for the purposes of the ACCA. Mr. Norton was sentenced subject to an enhancement under the ACCA. [Presentence Investigation Report, Doc. 454, at 12]. However, because he was sentenced before *Erlinger* was decided, a jury was not required to find beyond a reasonable doubt that his past offenses were committed on separate occasions.

While a jury would be required to find beyond a reasonable doubt that Mr. Norton's past offenses were committed on separate occasions today, *Erlinger* is not retroactively applicable to

cases on collateral review and cannot provide a basis for relief under § 2255. *Bonds v. United States*, No. 1:17-CR-108, 2025 WL 2166431 (E.D. Tenn, July 30, 2025). This Court has held the same in *Bawgus v. United States* and *Smith v. United States*. *Bawgus v. United States*, No. 2:22-CV-00132-JRG-CRW, 2024 WL 3837752 (E.D. Tenn. Aug. 15, 2024), *United States v. Smith*, No. 2:24-CV-66-JRG-CRW, 2026 WL 1295050 (E.D. Tenn. May 12, 2026). Because Erlinger is not retroactively applicable, it does not entitle Mr. Norton to § 2255 relief.

## IV. CERTIFICATE OF APPEALABILITY

Lastly, the Court must determine whether to issue a certificate of appealability, which is necessary for Mr. Norton to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). To make this showing, Mr. Norton must demonstrate that reasonable jurists would find the Court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court concludes that reasonable jurists would not find that its dismissal of Mr. Norton's claims for procedural default and lack of merit is debatable or wrong. The Court therefore declines to issue a certificate of appealability to Mr. Norton.

## V. CONCLUSION

As the petitioner under § 2255, Mr. Norton fails to meet his burden of establishing that his conviction and sentence are in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. His Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1] is therefore **DENIED**. The Court will enter an order consistent with this opinion.

So ordered.

ENTER:

s/ J. RONNIE GREER
UNITED STATES DISTRICT JUDGE